IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF NEW YORK

| | |
|---|---|
| THE BOGORAZ LAW FIRM<br><br>Plaintiff,<br><br>v.<br><br>APOGEE CAPITAL FUND 5, LLC<br><br>Defendants. | Civil Action No. |

**ORIGINAL COMPLAINT FOR DECLARATORY
JUDGMENT ACTION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the Bogoraz Law Group P.C. (hereinafter, "Bogoraz") by and through its counsel of record and pursuant to Fed.R.Civ.P. 57, 28 U.S.C. §§ 2201 & 2202 and 28 U.S.C. § 1332, hereby asserts its Complaint for Declaratory Judgment Action as follows:

**INTRODUCTION**

1. Defendant, Apogee is in the business of litigation finance and advances funds to litigants to cover cost of living and related expenses while a litigation is pending.

1

In return for the payment of expenses Apogee contracts for the right to receive a certain percentage of any settlement or award of damages the litigant receives from his or her claims. The funds advanced by Apogee are in the nature of an investment because there is no obligation to repay Apogee in the event a settlement or monetary damages award is not realized by the litigant.

2. This lawsuit arises from Apogee's advancing litigation funding to pursuant to a Transfer and Conveyance of Proceeds and Security Agreement (the "Agreement"), an Assignment of Proceeds ("Schedule A") and Disclosure ("Schedule B") executed solely by Apogee and a litigation client of Bogoraz named Helen John (hereinafter, Ms. John or John").

3. Plaintiff, Bogoraz executed an Attorney's Certification (the "Certification") on February 22, 2021. The Certification merely acknowledges that John owes Apogee money pursuant to the Agreement. Bogoraz is not in privity of contract with Apogee, did not receive proceeds from Apogee and does not owe Apogee any monies.

4. John suffered personal injuries on or about October 19, 2018 and was represented by Bogoraz in one or more actions (the "Claims") related to John's injuries that were commenced in New York State. Under the terms of the Agreement, Apogee advanced Ms. John funds in exchange for a percentage of the proceeds from a settlement or favorable judgment of her Claims and solely Ms. John agreed to distribute those proceeds in accordance with the terms and conditions therein.

5. Bogoraz on behalf of John eventually settled the Claims and attempted to pay Apogee the aggregate amount owed pursuant to the Agreement, Schedule A, Schedule B and the Certification. However, Apogee repeatedly rejected the attempted payments as being incorrect.

6. Thereafter, Apogee unsuccessfully sued Bogoraz in a Texas court as a defendant arguing Bogoraz was in privity of contract with Apogee. This action is brought to declare that Bogoraz is not in privity of contract with Apogee and owes no contractual duty to Apogee.

## PARTIES

7. Plaintiff, Bogoraz Law Firm (hereinafter "Bogoraz") is a professional corporation organized under the laws of the State of New York With its principal place of business in Brooklyn, New York at 3820 Nostrand Ave., #106, Brooklyn, NY 11235.

8. Defendant, Apogee is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 614 South Capitol of Texas Hwy., Austin, Texas 78746.

## JURISDICTION

9. This is a civil action to recover damages stemming from the fraudulent inducement into an oil and gas contract and the breach of that contract. This Court

has diversity jurisdiction pursuant to 28 U.S.C. §1332(a) as the amount in controversy exceeds $75,000, exclusive of interest and costs, and for purposes of this action, the Plaintiff is a citizen of the State of New York, and the Defendant is a citizen of the Texas.

10. This Court has personal jurisdiction over the Defendant because the Defendant conducts business in the State of New York within this judicial district. Specifically, Defendant wired substantial monies to Ms. John and other litigants in this judicial district.

11. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and a substantial part of the property (money at issue) that is the subject of the action is situated in this district.

## FACTS RELEVANT TO ALL CAUSES

12. Defendant, Apogee offers non-recourse litigation funding to cover costs and expenses incurred by litigants memorialized in funding agreements. Those agreements include a Transfer and Conveyance of Proceeds and Security Agreement (the "Agreement"), an Assignment of Proceeds ("Schedule A") and Disclosure ("Schedule B")

13. If a litigant such as Ms. John is successful in recovering a settlement or judgment, then the litigant is obligated to repay Apogee a certain amount pursuant to the terms and conditions of the Agreement. The Agreement in this action provides

4

that Apogee is entitled to the total amount of their $23,435.76 investment of funds advanced to John, an administrative fee of $450.00 and a fee of 3.65%, accruing in subsequent three-month periods, on the funds and the administrative fee, until the total amount owed is paid. A schedule indicating the monthly payments due on or before the 19th day of each month is appended to the Agreement. A quarterly payment schedule is also included on the front page of the Agreement.

14. Plaintiff Bogoraz signed a separate document titled a Attorney's Certification (hereinafter "Certification") That Certification merely acknowledges that Bogoraz confirms that it (Bogoraz) represents Ms. John and that Ms. John executed the Agreement with Apogee.

15. The Certification is merely an acknowledgment of the contractual obligations between Apogee and Ms. John. The Certification is not an agreement between Apogee and Bogoraz. In fact, the Certification is executed solely by Bogoraz and contains no consideration that brings it into the category of an enforceable agreement.

16. Upon the resolution of the litigation, Apogee posits that Bogoraz and Ms. John owes it monies pursuant to the Agreement. Notwithstanding no agreement between the Parties, Apogee seeks recovery from Bogoraz for monies owed by Ms. Johns pursuant to the Agreement.

17. To be clear, Bogoraz efforted to facilitate a payment from Ms. Johns to Apogee from the litigation resolution. However, Apogee rejected the efforts as

insufficient and maintains that Bogoraz is directly and contractually obligated to it for more money.

18. Therefore, an actual and justiciable controversy exists regarding the nature and scope of the contractual relationship, if any, exists.

## FIRST CAUSE OF ACTION

### (Declaratory Relief)

19. Plaintiff realleges the material factual allegations in the preceding paragraphs.

20. PBR contends that an enforceable contract exists between it and Pezco for Pezco to source and provide oil and gas product from a refinery in Curacao to board a vessel named the Triton Freedom for a price $310,400.

23. PBR performed the terms of the contract. Specifically, PBR wired $310,400 to Pezco for the purchase of Gasoil D2 in the quantity of 265,000 gallons.

24. Pezco materially breached the agreement by failing to provide the product paid for in advance.

24. Resultantly, PBR suffered damages by the money owed to its clients, the money paid to Pezco for the product and expenses relating to securing the product.

### Count II

### Fraud in the Inducement

25. Plaintiff realleges the material factual allegations in the preceding paragraphs.

26. Pezco is liable to PBR for fraudulent inducement.

27. Pezco, by and through, Juan M. Sanchez falsely represented to PBR that it could source and provide 'fuel' and load same on a vessel in a refinery in Curcacao for this price at this time frame for this price.

28. Juan M. Sanchez, acting on behalf of Pezco, made those representations orally and in writing in prior the execution of the purchase agreement between PBR and Pezco. He repeated those representations in writing and orally several times through (time). Mr. Sanchez, acting in his capacity as owner and president of Pezco knew or should have known, at that time that those representations were made, were false. Mr. Sanchez certainly knew when he accepted the wired proceeds from PBR that he did not contract with the refinery to provide product to a vessel arranged to receive product purchased by PBR or that it (Pezco) would ever make arrangements for the purchase of that product.

29. Alternatively, Mr. Sanchez' statements to PBR, particularly those that preceded PBR's initial wiring of money, can be construed as promises that Mr. Sanchez never intended to fulfill.

30. Again, Sanchez made those misrepresentations with the intent that PBR act on them and PBR did in fact act on those representations. PBR reasonably relied on those misrepresentations when it sent hundreds of thousands of dollars to Pezco. PBR received nothing in exchange for sending that money, causing it injury.

## Count III

## Promissory Estoppel

31.  Further, and in the alternative, Pezco is liable to PBR for promissory estoppel. Pezco, by and through its owner, Juan M. Sanchez, promised PBR that if PBR paid the $310,000 (the agreed price was $360,400, however it was rerpresented the refinery would load the vessel with the fuel while Pezco held $310,000) for the purchase of 265,000 gallons of Gasoil D2, Pezco would provide the fuel.

32.  Pezco could foresee that PBR would rely on this promise, and PBR reasonably and substantially relied on that promise in sending money to Pezco. The only way to avoid injustice is to enforce Pezco's promise.

## Count III

## Conversion

33.  Further, Pezco is liable to PBR for conversion. To establish a claim for conversion of money under Florida law, a plaintiff must demonstrate, by a preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so. *See Navid v. Uiterwyk Corp.*, 130 B.R. 594, 595-596 (M.D.Fla.1991)

34.  The money that PBR sent to Pezco as instructed was PBR's personal property. Pezco had, and has, the right to possess that property immediately. PBR delivered that money to Pezco for safekeeping and with the intent that it be kept segregated and used solely for the purpose of purchasing 265,000 gallons of Gasoil D2. The money is substantially in the form that it was when it was delivered, and it isn't subject to a

title claim by the person keeping it. PBR demanded the return of that money, but Pezco refuses or is unwilling to relinquish control over it. Pezco is wrongfully and unlawfully exercising control over the money, and that exercise is injuring PBR.

## Count IV

### Pierce the Corporate Veil

35. In Florida, A corporate officer may not be held individually liable on a contract unless he signed in an individual capacity, or unless the corporate veil was pierced or the corporate entity should be ignored because it was found to be formed or used for fraudulent purposes, or where the corporation was merely the alter ego of the shareholder. *Ryan v. Wren*, 413 So. 2d 1223, 1224 (Fla. 2d DCA 1982).

36. Here, Juan M. Sanchez, the sole owner and operator of Pezco, intentionally made false statements to PBR regarding Pezco's ability to provide the product at issue. Mr. Sanchez used Pezco to pretend it could perform the commercial transaction contemplated and paid form by PBR. Mr. Sanchez engaged in this improper conduct solely to deceive PBR in pretending Pezco was a reputable and capable company. The false statements of Mr. Sanchez was the proximate cause of PBR's loss of the money advanced.

## Count V

### Civil Theft

37. PBR is entitled to recover against Pezco and Sanchez for civil theft. Pezco acting by and through Sanchez intended to deprive PBR of the wired proceeds and

use the proceeds for their own purposes. PBR vetted every statement made by the Defendants regarding the status of the purported transaction. Each statement made by the Defendants, including but not limited to the payment of the product in Curcacao, the status of the vessel to the status of the product was false. Those statements would not have been false but for the clear intent to deprive PBR of its proceeds to the benefit of the Defendants.

38. The Defendants felonious conduct results in civil theft under Florida Statute s. 772.11 entitling PBR to treble damages and attorneys' fees.

## Damages

## Compensatory Damages

39. PBR is entitled to recover the money he sent to Pezco to compensate for its pecuniary loss, loss of profits and out of pocket losses.

40. Additionally, PBR is entitled to recover damages that were the consequence of the Pezco's breaches and torts. These include lost profits—the amount that PBR would have made from the sale of the fuel purchased from Pezco. Further, PBR loss the use of the money advanced to timely satisfy creditors. See e.g.,

| Description | Debit | Credit |
| --- | --- | --- |
| Pezco Wire – 7/12/2021 | $145,000 | |
| Pezco Wire – 7/14/2021 | $165,400 | |
| Received back from Pezo – 7/23/21 | | $80,000 |
| Port Agency Fees | $30,000 | |
| Exchange conversion to Dollars | $20,000 | |
| Loss of Profit | $64,000 | |
| Attorney's Fee's | | |
| Vessel Charter Hire | $120,000 | |
| Fuel Charges: $4/gallon – 10,000 | $40,000 | |
| Customer Claim on PBR | $90,000 | |

**Claim Total: $594,400 sought from Defendants**

## Exemplary Damages

41.     Pezco defrauded, and acted with the specific intent to cause substantial harm to, PBR. Pezco and Sanchez consciously disregarded the known, extreme risk that the dissipation of the money advanced by PBR would harm PBR. Each Defendant was actually aware that the statements and promises made to PBR were false. They are thus all liable for exemplary damages under Title XLV Chapter 768.72 of the Florida Statutes.

## Restitution

42.     Allowing the Defendants to retain the money that PBR sent to them would unjustly enrich them and afford them an inequitable windfall. Thus, PBR is entitled to restitution of the amounts that he sent to the Defendants.

## Disgorgement

43.     Allowing the Defendants to retain profits and interest that they obtained from the use of PBR's money would unjustly enrich them and afford them an inequitable windfall. Thus, PBR is entitled to have the Defendants disgorge those profits and

interest after an accounting of the bank accounts in which PBR's proceeds were deposited.

### Legal fees and costs

44. PBR is entitled to recover its legal fees from Pezco and Sanchez. PBR is entitled to recover the reasonable and necessary legal fees that it incurs in holding the defendants to the terms of their agreements. PBR hired lawyers to enforce those terms, and it is entitled to recover the reasonable and necessary fees that it incurs in doing so.

45. Because they have committed statutory fraud, PBR is also entitled to recover his legal fees from the defendants under § 772.104, Fla. Stat. and § 772.11, Fla. Stat.

### Interest

46. PBR is entitled to pre- and post-judgment interest under the common law, principles of equity, the applicable Florida statutes authorizing same.

### Preliminary and Permanent Injunction

47. The Defendants have no viable defense or explanation for any of their fraudulent activities, and PBR is likely to succeed on all of its claims. However, for purposes of a preliminary injunction, PBR need only rely upon its proof of funds sent and no product ever existing or provided to PBR to justify the requested injunctive relief.

### PBR Is Likely to Succeed on Its Claims

48. The Court should issue a preliminary and permanent injunction prohibiting the Defendants from using or further dissipating the proceeds obtained from PBR to further its business operations and to prevent immediate and irreparable harm to PBR caused by Defendants' improper and unlawful actions. PBR's ownership of the proceeds is established and the Defendants' refusal to accurately or factually account for the money makes clear the Defendants' nefarious conduct and constitute prima facie evidence of, inter alia, of the legitimacy of the Defendants' request for the money.

49. The fraud is irrefutable here. The Pezco Defendants' fraudulent use of PBR's money obtained by a blatant scheme to deceive demonstrates PBR's likelihood to succeed on the merits.

### PBR Will Be Irreparably Injured Absent an Injunction

50. The Pezco Defendants' fraudulent conduct and repeated false statements to further mask and disguise its unlawful conduct, again demonstrates a blatant scheme to deceive PBR. There can be no doubt that immediate irreparable harm to PBR will follow from the Pezco Defendants' continued use of PBR's proceeds in its business operations or for Defendant Sanchez' personal use makes clear that Pezco is likely without resources to satisfy any judgment this Court may later enter. Consequently, PBR cannot easily be compensated through monetary damages since the Pezco Defendants' modus operandi is to engage in fraud to fund their operations. The fact

that the Pezco Defendants employ deceptive practices and engage in intentionally deceptive and fraudulent tactics demonstrates the untrustworthiness of the Pezco Defendants. Those who choose to do business with the Pezco Defendants on the mistaken belief that they are a legitimate and funded business operation are likely to, also be victimized by the Defendants.

51. PBR also will suffer irreparable injury because it is difficult to quantify in monetary terms the diminution in PBR's goodwill and the harm to the distinctiveness PBR providing product to its clients. Specifically, the transaction to which Pezco was to provide fuels places PBR in the position of default to its client. Accordingly, the Pezco Defendants' unlawful conduct irreparably harms PBR in a manner that monetary damages cannot remedy.

### The Balance of Hardships Unquestionably Favors PBR

52. Any harm to the Pezco Defendants in the event of a preliminary or permanent injunction is of their own doing and as a result of their decision to embark on a fraudulent scheme, rather than developing their business through legitimate means.

### An Injunction Is in the Public Interest

53. Granting a preliminary injunction in this case serves the strong public interest in stopping fraud. Without an injunction by this Court, the Pezco Defendants' will continue and will leave members of the public open to being victimized by their fraudulent conduct. The Pezco Defendants cause confusion in the marketplace and

with prospective customers confused in thinking that they are dealing with a trusted entity, when they are not. By preventing unauthorized and unlawful conduct of the Pezco Defendants and the deceptive and wrongful use of PBR's funds an injunction will preserve the funds or what is left of the funds and further the goals preventing the confusion of the public.

### Hearing / Oral Argument

54. Plaintiff respectfully request that the Court set the matter for hearing/argument as soon as possible in the venue most convenient for the Court after the Defendants are served and filed their appearance herein. Plaintiff is available for a telephonic hearing, if most convenient for the Court.

### PRAYER FOR RELIEF

WHEREFORE, PBR prays for the following relief:

  A. That this Court grant preliminary and permanent injunctions pursuant to the powers granted it under 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and at common law, enjoining and restraining the Pezco Defendants and their principals, agents, servants, and employees, and all those working in concert with the Pezco Defendants, directly or indirectly from:

    i.    further dissipating, withdrawing or using any amount up to $310,400 of the wired funds in any account in which the proceeds was deposited and/or later withdrawn and re-deposited;

    ii.    from destroying, altering, concealing or manipulating any documents relating to the purchase of 265,000 gallons of Gasoil D2 by PBR;

    B.    That this Court enter judgment that the Pezco Defendants individually, jointly and severally liable to PBR for breach of contract, fraud, civil theft and are estopped from withholding the proceeds advanced to Pezco by PBR in the manner complained of above;

    C.    That this Court, pursuant to the powers granted to it award to PBR and against the Pezco Defendants, treble damages and profits, and reasonable attorneys' fees because there has been intentional conduct and theft by the Pezco Defendants;

    D.    That this Court, pursuant to the powers granted it award to PBR and against the Pezco Defendants, damages, profits, and costs;

    E.    That this Court, pursuant to the powers granted it, award to PBR and against the Pezco Defendants, PBR's reasonable attorneys' fees because this is an exceptional case and applies under the Florida civil theft act;

    F.    That this Court award punitive and exemplary damages against the Pezco Defendants and in favor of PBR by reason of the Pezco Defendants' intentional or reckless disregard for PBR's rights and the rights of those defrauded;

G. That this Court hold each of the Pezcp Defendants jointly and severally liable for any underlying tort committed in furtherance of their civil theft and fraud;

H. That costs of this action be awarded to PBR; and

I. That this Court grant such other and further relief as it deems just and reasonable.

Respectfully submitted,

**GREALISH MCZEAL, P.C.**

By: */s/ Marcellous S. McZeal*
  Marcellous S. McZeal (pro hac pending)
  United State Southern District of Tex.
  Admission No.: 21271
  United States Supreme Court Admission No.: 306368
  E-Mail: mmczeal@grealishmczeal.com
  700 Louisiana St., 48th Floor
  Houston, Texas 77002
  (713) 255-3234 – Telephone
  (713) 783-2502 – Facsimile


By: */s/ O. Williams Igbokwe*
  O. Williams Igbokwe (5170683)
  Law Office of William Igbokwe
  28 Liberty Street, 6th Floor
  New York, NY 10005
  Phone: (347) 467-4674
  Fax: (347) 467-6367

*Attorneys for Plaintiff*