UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
THE BOGORAZ LAW FIRM,

                Plaintiff and Counter-Defendant,

        - against-

APOGEE CAPITAL FUND 5, LLC,

                Defendant and Counter-Plaintiff,

         -against-

HELEN JOHN,

                Third-Party Defendant.
---------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-CV-1023 (OEM) (LKE)

 ORELIA E. MERCHANT, United States District Judge:

      This action arises out of a dispute between the Bogoraz Law Firm ("Plaintiff" or "Bogoraz") and Apogee Capital Fund 5, LLC ("Apogee") over the amount Apogee is owed under a litigation finance agreement between Apogee and Bogoraz's client, Helen John ("John"), to fund John's personal injury suit in New York state court. Bogoraz commenced this action against Apogee seeking a declaratory judgment that Bogoraz and Apogee are not in privity of contract under the attorney certification appended to the litigation finance agreement. Bogoraz's Amended Complaint, ECF 5 ("Am. Compl."). Apogee then countersued Bogoraz and John asserting, *inter alia*, breach of contract, conversion, promissory estoppel, and tortious interference with contract counterclaims. Defendant's Answer and Counterclaim, ECF 15 ("Def.'s Answer and Countercl."); Third-Party Complaint Against Helen John, ECF 16.

Before the Court are three motions: (1) Apogee's fully briefed motion for summary judgment,[1] (2) Bogoraz's motion to strike a portion of Apogee's February 14, 2025 letter to the Court, Bogoraz's Motion to Strike, ECF 56 ("Mot. to Strike"), and (3) Bogoraz's motion for sanctions, Motion for Sanctions against Apogee ECF 50 ("Mot. for Sanctions").  For the following reasons, Apogee's motion for summary judgment is granted in part and denied in part, Bogoraz's motion to strike is denied, and Bogoraz's motion for sanctions is denied.

## BACKGROUND[2]

Bogoraz represented John in a personal injury suit.  Unable to cover her living expenses at the time, John sought an investment from Apogee to support her lawsuit.  John and Apogee executed an agreement that provided that Apogee would advance funds to John in exchange for a payout in the event of a settlement or favorable judgment of John's claims.[3]  Def.'s 56.1 Statement ¶ 4.  By signing an attorney certification appended to the agreement, Karine Bogoraz of the Bogoraz Law Firm, acknowledged that she had reviewed the agreement between John and Apogee and had explained its terms to John before John signed.  *Id.* ¶ 25.  The attorney certification also stated that the Bogoraz Law Firm agreed to distribute funds from a favorable award of damages or

---

[1] *See* Motion for Summary Judgment by Apogee Capital Fund 5, LLC, ECF 48; Memorandum of Law in Support of Apogee's Motion for Summary Judgment, ECF 48-1 ("Apogee's Mem."); Apogee's Local Rule 56.1 Statement of Undisputed Material Facts in Support of Motion for Summary Judgment, ECF 48-20 ("Def.'s 56.1 Statement"); Plaintiff Bogoraz Law Firm's Memorandum in Support of its Response, ECF 49 ("Bogoraz's Opp."); Bogoraz's Local Rule 56.1 Counterstatement, ECF 49-1 ("Bogoraz's 56.1 Counterstatement"); Apogee's Reply Memorandum in Support of Apogee's Motion, ECF 48-22 ("Apogee's Reply").

[2] The following facts are taken from Apogee's Local Rule 56.1 statement, the unverified Amended Complaint, and Apogee's Answer and counterclaims.  *See* Def.'s 56.1; Am. Compl.; Def.'s Answer and Countercl.  The amended complaint is unverified and therefore cannot be considered as evidence at summary judgment, but the Court includes facts from the amended complaint to provide relevant context.  *See Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 07-CV-3635 (DC), 2009 WL 1564144, at *1 n.1 (S.D.N.Y. Jun. 4, 2009) (finding that on a motion for summary judgment "allegations in an unverified complaint cannot be considered as evidence.") (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

[3] This is not the only contract of this type that exists between Apogee and Bogoraz's clients.  Def.'s Answer and Countercl. at n.1.

2

settlement, pursuant to the terms set forth in the agreement between John and Apogee, and that Bogoraz was not aware of any liens against the potential proceeds from John's lawsuit. *Id.* ¶¶ 26, 28. On or about December 27, 2021, Bogoraz settled John's personal injury suit and thereafter distributed a check to Apogee that was less than the amount that was due under the payment schedule set forth by the agreement. *Id.* ¶¶ 30, 41-42. To date, Bogoraz has not remitted the full amount that Apogee says it is owed. *Id.* ¶¶ 43-46, 52.

### A. The Parties

Bogoraz is a "family-run law firm with its principal office in Brooklyn, New York." Bogoraz's Letter Response to Apogee's Pre-Motion Conference Letter, ECF 44 at 1; *see* Am. Compl. ¶ 7. Karine Bogoraz, who is not a named plaintiff in this action, is a member of the Bogoraz Law Firm and represented John in a personal injury action John brought in New York related to injuries she suffered on or about October 19, 2018.[4] PI Settlement Breakdown, ECF 48-4 at 2; Am. Compl. ¶ 4.

Apogee is a litigation finance firm with a principal place of business in Austin, Texas. Def.'s Answer and Countercl. at 6. Apogee offers payments to cover costs and expenses incurred by litigants, and in exchange, if the litigant recovers a favorable award of damages or settlement, Apogee is entitled to recover its original investment of funds, plus an administrative fee, *id.*, and "the right to receive a certain percentage of any settlement or award of damages" resulting from the litigation. Am. Compl. ¶ 2. Apogee provided payments to John in connection with her personal injury lawsuit. *Id.* ¶¶ 1-2.

---

[4] The Bogoraz Law Firm represented John in *Helen John v. William Li and Weihong Lei*, NYC-OCA, Case No. 7883316, 2019.

### B. The Agreement Between John and Apogee

On or about February 23, 2021, John executed a Transfer and Conveyance of Proceeds and Security Agreement with Apogee.  Def.'s 56.1 Statement ¶ 1; Declaration of Peter Rood Ex. 1, Transfer and Conveyance of Proceeds and Security Agreement, ECF 48-3 (the "Agreement"). Apogee agreed to send John $23,435.76 in connection with her personal injury lawsuit in New York.  Def.'s 56.1 Statement ¶ 5.  In exchange for that investment, the parties agreed that if John prevailed on her claims, Apogee would be entitled to recover the total amount of its original $23,435.76 investment, an administrative fee of $450.00, and a fee of 3.65 percent, accruing in subsequent three-month periods, on the funds and the administrative fee, until the total amount owed to Apogee was paid.  *Id.* ¶¶ 7, 12.

The Agreement incorporates an Attorney's Certification, Declaration of Peter Rood Ex. 1, Attorney's Certification, ECF 48-3 ("Certification"), an Assignment of Proceeds ("Schedule A"), ECF 48-3 at 11, and a Disclosure ("Schedule B"), ECF 48-3 at 12.  Def.'s 56.1 Statement ¶ 3.

The Agreement also contains an appendix.  Appendix A of the Agreement includes a payment schedule providing that monthly payments are due on or before the 19th day of each month to Apogee.  Appendix A, ECF 48-3 at 13.  The funds from Apogee were considered "an investment rather than a loan" because John was obligated to repay Apogee only if she received settlement or judgment proceeds.  Def.'s 56.1 Statement ¶¶ 6, 9.  Apogee was entitled to payment of the full amount owed as of the date of any potential settlement before John could receive any remaining portion of the proceeds.  *Id.* ¶ 12.

On February 22, 2021, Karine Bogoraz signed the Certification on page nine of the Agreement.  *Id.* ¶ 3.  On February 23, 2021, John signed the Agreement and Schedule B in front of an online Texas notary, and initialed and acknowledged the Certification, Schedule A, and

4

Appendix A.  Def.'s Answer and Countercl. at 8.  By endorsing the Agreement, John represented that she was unaware of any liens that would "materially impair the rights, value, priority or collectability of the rights assigned to Apogee Capital Fund 5, LLC hereunder," and by endorsing the Certification, Karine Bogoraz likewise represented that she was not aware of any liens. Agreement at 5; Certification.  Pursuant to the Certification, Karine Bogoraz handled ministerial duties, including explaining the terms of the Agreement to John and disbursing any funds pursuant to the Agreement accordingly.  Def.'s 56.1 Statement ¶¶ 18-19; Certification.

### C.  Apogee's Quarterly Statements to John and Bogoraz

Following the parties' execution of the Agreement, Apogee sent quarterly prospective statements to Bogoraz and John reflecting the amount owed under the Agreement.  Def.'s 56.1 Statement ¶ 37.  Apogee's June 21, 2021 statement indicated that the amount owed from any proceeds remitted to Apogee on or before August 19, 2021, was $29,617.94 in accordance with the terms of the Agreement, and directed Bogoraz and John to contact Apogee for an updated payment amount if John's lawsuit was resolved after August 19, 2021.  *Id.*  Apogee's October 7, 2021 statement stated that the amount due on or before November 19, 2021, was $32,980.02, and directed Bogoraz and John to contact Apogee for an updated amount if payment was not remitted to Apogee by November 19, 2021.  *Id.*

On October 27, 2021, Bogoraz emailed Apogee, acknowledged receipt of Apogee's October 7, 2021 quarterly statement reflecting the amount owed under the payment schedule, and requested a reduction of the amount owed to $25,000.  Def.'s 56.1 Statement ¶¶ 37-38.  Apogee refused Bogoraz's request to reduce the amount owed from $32,980.93 (as of October 27, 2021) to $25,000.  *Id.* ¶¶ 39-40.

**D.  John's Personal Injury Lawsuit Settles and Apogee Demands Full Payment**

On or about December 27, 2021, John obtained a favorable settlement from an insurance company in the amount of $82,500, and Bogoraz deposited the proceeds into its account.  Def.'s 56.1 Statement ¶ 30.  On December 29, 2021, Bogoraz issued a check to Apogee in the amount of $29,617.94, which did not conform to the $36,725.76 amount that was owed as of that date.  *Id.* ¶¶ 41-42.

On or about January 6, 2022, Bogoraz presented the PI Settlement Breakdown to John for her signature.  *Id.* ¶¶ 31, 34.  The PI Settlement Breakdown lists an amount payable to Apogee of $29,617.94 under the column "Negotiated Amount," *id.* ¶ 31, even though the amount owed pursuant to the Agreement as of December 29, 2021, was $36,725.76.  *Id.* ¶ 32.  The PI Settlement Breakdown also lists an amount payable to Hereford Insurance of $15,000 under the "Negotiated Amount" column.  *Id.* ¶ 33.

On January 11, 2022, Apogee emailed Bogoraz, notified Bogoraz that the check did not conform to the Agreement, and requested payment of the full $36,725.76 that was owed as of December 29, 2021, the day Bogoraz issued the initial nonconforming check.  *Id.* ¶ 43.

In response, on January 13, 2022, Karine Bogoraz emailed Apogee and again asked Apogee to reduce the amount owed, this time to the amount of the check that was issued.  *Id.* ¶ 44.  Apogee responded to Bogoraz the same day, declined to reduce the amount owed, and requested payment of the full $36,725.76 that was due under the Agreement.  *Id.* ¶ 45.

On January 25, 2022, Bogoraz submitted a Closing Statement to the New York State Office of Court Administration listing the amounts received from the settlement of John's claims and the distributions that were paid to Hereford Insurance, Bogoraz, and Apogee.  *Id.* ¶ 35.  The Closing Statement lists $29,617.94 as the amount paid to Apogee.  *Id.*

6

Apogee did not authorize or accept the payment of an amount that was less than the amount owed pursuant to the Agreement. *Id.* ¶ 49. Bogoraz concedes that the terms of the Agreement were never modified. *Id.* ¶ 50. Bogoraz did not notify Apogee of the existence of any liens or claims against the settlement or judgment proceeds until *after* it issued the check for $29,617.94 to Apogee. *Id.* ¶ 51.

### E. Apogee Sues Bogoraz in Texas Seeking Full Payment

On May 24, 2022, after Bogoraz's continued failure to pay Apogee the additional $7,107.82 Apogee claims was due, Apogee filed suit against Bogoraz in Texas. *See* CD-1-GN-22-002380 in the 200th Judicial District Court of Travis County, Texas, 2022 WL 1963705, styled *Apogee Capital Fund 5, LLC v. Helen John and Bogoraz Law Group, P.C.* Apogee argued that it was in privity of contract with Bogoraz. *Id*. On August 30, 2022, Apogee secured a default judgment against Bogoraz. *Id.* But on November 9, 2022, Bogoraz obtained an order vacating the default judgment. *Id.*

On February 8, 2023, Bogoraz commenced this action, seeking a declaratory judgment that Bogoraz is not in privity of contract with Apogee and owes no contractual duty to Apogee. *See generally* Compl. The initial complaint contained portions of an unrelated action apparently involving an oil and gas dispute, and Bogoraz subsequently filed an amended complaint on February 13, 2023, which is Bogoraz's operative pleading in this action. *See* Compl. ¶ 9; *See generally* Am. Compl.

On May 16, 2023, Apogee answered the Amended Complaint, asserted counterclaims against Bogoraz, and filed a third-party complaint against John. *See generally* docket sheet. Bogoraz did not answer Apogee's counterclaims against it. *Id.*

On October 31, 2023, Apogee filed amended counterclaims against Bogoraz, adding a cause of action for tortious interference with contract, and on November 27, 2023, Bogoraz filed an answer to the amended counterclaims.  *Id.*  John has not appeared in this action, and has not answered the third-party complaint against her, or otherwise defended herself in this action.  *Id.*

## LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Rule 56(c) of the Federal Rules of Civil Procedure requires parties to follow specific procedures when addressing factual issues during summary judgment briefing.  Specifically, to demonstrate that "a fact cannot be or is genuinely disputed," parties must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1)(A)-(B).  The moving party bears the burden of showing it is entitled to summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion."  *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).  The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility

assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). Therefore, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (alteration in original) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)).

If the moving party meets its burden of demonstrating that there is no disputed issue of material fact *and* that the party is entitled to judgment as a matter of law, then the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial." *Sheet Metal Workers' Nat'l Pension Fund v. Accra Sheetmetal, LLC*, 993 F. Supp. 2d 245, 248 (E.D.N.Y. 2014); *Anderson*, 477 U.S. at 248 (the party opposing the motion "may not rest upon the mere allegations or denials in his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial."). The nonmoving party cannot rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Moreover, if the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Under Rule 56(c)(3), the Court may also look to other materials in the record in its review. *See* FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); FED. R. CIV. P. 56(C) Advisory Committee's Note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").

### B. EDNY Local Rules and The Court's Individual Practices & Rules

Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") provides that a party opposing a motion for

summary judgment must "include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Rule 56.1(b).  "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party *will be deemed to be admitted* for purposes of the motion *unless specifically denied and controverted by a correspondingly numbered paragraph* in the statement required to be served by the opposing party."  Local Rule 56.1(c) (emphases added).

Furthermore, this Court's Individual Practices & Rules require a party's 56.1 Counterstatement to "quote, verbatim, the 56.1 Statement, including all citations, and respond to the moving party's statements of fact immediately beneath each statement."  Individual Practices & Rules, Section III, Part C(3).  Under these rules, "Any evidence cited in a party's 56.1 Statement, Counter Statement, or Reply Statement must be attached as an exhibit to a declaration and filed along with a party's 56.1 Statement."  *Id.* at Section III, Part C(6).  Finally, the rules provide that "material facts in any . . . memorandum of law in connection with a motion for summary judgment must cite to relevant paragraphs of 56.1 Statements."  *Id.* at Section III, Part C(8).

### C.  Motion for Sanctions under Federal Rule of Civil Procedure 11

Federal Rule of Civil Procedure 11 provides that:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b)(1)-(4). Attorneys are required to "undertake [a] reasonable inquiry to ensure that papers filed are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 368 (E.D.N.Y. 2013) (quoting *Young v. Suffolk Cnty.*, 922 F. Supp. 2d 368, 396 (E.D.N.Y. 2013)).

Fees may be awarded to penalize violations of Rule 11. "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness." *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000). An action is "objectively unreasonable" such that "Rule 11 sanctions are appropriate where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that [the claim] was groundless." *Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 220 (E.D.N.Y. 2011) (quoting *Carlton Grp., Ltd. v. Tobin*, 02-CV-05065 (RJD) (RM), 2003 WL 21782650, at *6 (S.D.N.Y. July 31, 2003)) (quotation marks omitted). Even if a court determines that Rule 11(b) has been violated, the court still has discretion to decide whether to impose sanctions. *Simon DeBartolo Grp. L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999).

## DISCUSSION

The seminal issue before the Court is whether Bogoraz's execution of the Certification, attached to an Agreement between Apogee and John, brings Bogoraz into privity of contract with, and imposes contractual obligations or other duties on Bogoraz as to Apogee.

In support of its motion for summary judgment, Apogee filed a Rule 56.1 Statement asserting 57 facts, each supported by a citation to record evidence, in compliance with Rule 56(c). *See* Def.'s 56.1.

Bogoraz, who is represented by counsel, filed a 56.1 Counterstatement in support of its opposition to Apogee's motion for summary judgment that complies with neither Rule 56, nor the Local Rules, nor this Court's Individual Practices & Rules. *See* Bogoraz's 56.1 Counterstatement. Bogoraz's 56.1 Counterstatement does not quote Apogee's 56.1 Statement from the summary judgment briefing. *Id.* Instead, Bogoraz simply refiled the same 56.1 Counterstatement it filed in response to Apogee's pre-motion conference request and 56.1 statement, in anticipation of moving for summary judgment. *Id.*; *see also* Bogoraz's Rule 56.1 Statement in Opposition to Apogee's Pre-Motion Conference Request, ECF 45. But the 56.1 Statement that Apogee filed in support of its motion for summary judgment is materially and significantly different from the 56.1 Statement it filed in support of its pre-motion conference request. In such circumstances, Rule 56(e) provides that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED. R. CIV. P. 56(e)(1)-(4). Here, given the procedural posture of this case, Bogoraz's sophistication as a party, and the fact that Bogoraz is represented by counsel, the Court deems the facts asserted in Apogee's 56.1 Statement as undisputed for purposes of this motion, per Federal Rule of Civil Procedure 56(e)(2).

While Bogoraz's Counterstatement is procedurally deficient, the Court must nonetheless examine Apogee's 56.1 Statement in its entirety to determine whether Apogee has met its burden of demonstrating that no material issue of fact remains for trial. When determining whether the moving party has satisfied this burden, the Court "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Giannullo v. City of New York*, 322 F.3d 139,143 n.5 (2d Cir. 2003).

### A.  Subject Matter Jurisdiction

Before the Court reaches the merits of the instant motion for summary judgment, the Court must assure itself of its subject matter jurisdiction to hear this action. *See Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900) (holding that "the first and fundamental question is that of jurisdiction" and that "the court is bound to ask and answer [this question] for itself, even when not otherwise suggested, and without respect to" the parties' perspectives). As the basis for jurisdiction, Bogoraz asserts that "[t]his is a civil action to recover damages stemming from the fraudulent inducement into an oil and gas contract and the breach of that contract . . . [and] the amount in controversy exceeds $75,000, exclusive of interest and costs, and for purposes of this action, the Plaintiff is a citizen of the State of New York, and the Defendant is a citizen of the [State of] Texas." Am. Compl. ¶ 9. Notably, while Bogoraz states that "Apogee is entitled to the total amount of [its] $23,435.76 investment of funds advanced to John, an administrative fee of $450.00 and a fee of 3.65 percent, accruing in subsequent three month periods," on the funds and the administrative fee, "until the total amount owed . . . [is] paid," *id.* ¶ 13, Bogoraz does not allege additional facts in its amended complaint explaining how the amount in controversy exceeds

13

$75,000. However, based on Apogee's filings, $56,468.01, including fees and interest, was due to Apogee at the time the Complaint in the instant action was filed. *See Grunblatt v. UnumProvident Corp.*, 270 F. Supp. 2d 347, 349 (E.D.N.Y. 2003) (explaining that "[a]lthough 28 U.S.C. § 1332 specifically mandates the exclusion of interest in determining the amount in controversy, interest is nonetheless included when it is an essential ingredient of the principal claim," like when interest is owed as part of an underlying contractual obligation); *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir. 1994) (same).

However, the $56,468.01 due to Apogee, including interest owed when this action was initiated, does not alone establish the jurisdictional amount. *See Kaplan v. Comput. Scis. Corp.*, 148 F. Supp. 2d 318, 320-21 (S.D.N.Y. 2001) (explaining that a defendant's counterclaims are not considered when calculating an amount in controversy); *accord Correspondent Servs. Corp. v. First Equities Corp.*, 442 F.3d 767, 769 (2d Cir. 2006) ("the amount in controversy is calculated from the plaintiff's standpoint . . . .") (quoting *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 49 (2d Cir. 1972)). "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975)).

In a declaratory judgment action, "the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). "'[T]he value of the suit's intended benefit' or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Kheel*, 457 F.2d at 49 (quoting *Mass. State Pharm. Ass'n v. Fed. Prescription Serv.*, 431 F.2d 130 (8th Cir. 1970)); *see also Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975) ("[T]he

14

amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.").  This value "is calculated from the plaintiff's standpoint."  *Kheel*, 457 F.2d at 49; *DIRECTV Latin Am., LLC v. RCTV Int'l Corp.*, 11-CV-05456 (PAC), 2012 WL 13064909, at *2 (S.D.N.Y. May 30, 2012).

Given the uncertainty that the instant action met the amount in controversy requirement based on the $56,468.01 due to Apogee, the Court directed the parties to file letters stating the basis for this Court's subject matter jurisdiction.[5]  In response, Bogoraz explained that at the time the complaint was filed, Apogee sought "recovery of all damages stated in the Agreement," including attorney's fees, which may be included in the calculation of the amount in controversy if they are recoverable as a matter of right pursuant to statute or contract.  Bogoraz's Letter Explaining Amount in Controversy, ECF 59 at 2.  "The Second Circuit has held that attorney's fees may be used to satisfy the amount in controversy . . . where they are recoverable as of right pursuant to statute or contract."  *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 755 (E.D.N.Y. 2001); *see also Maxons Restorations, Inc. v. Newman*, 292 F. Supp. 2d 477, 482 (S.D.N.Y. 2003) (same).  Defendant submitted invoices in support of its claims, demonstrating that it accumulated tens of thousands of dollars in attorney's fees related to this dispute even prior to the filing of the instant complaint.  *See* Affidavit of Nelson Stewart in Support of Evidence of Reasonable and Necessary Attorney's Fees, ECF 48-21 ("Stewart Aff.") at 9-52.

Taking the sum of the evidence in the record and applying the applicable law, the Court concludes that there is a "reasonable probability" that the amount in controversy exceeded the statutory jurisdictional amount at the onset of this litigation.  *See Tongkook*, 14 F.3d at 784.  Having

---

[5] *See In re Fosamax Prods. Liab. Litig.*, 06-MD-1789 (JFK), 2013 WL 603187, at *2 (S.D.N.Y. Feb. 14, 2013) ("[A] district court may allow a plaintiff to 'clarify' his or her complaint after removal in order to assist the court in evaluating the jurisdictional facts existing at the time of removal, if the complaint was ambiguous or silent as to the precise amount in controversy.").

determined that it has subject matter jurisdiction to hear this action, the Court now turns to the merits of the parties' claims.

## B. Contract Claims

### 1. Bogoraz's Amended Complaint

Apogee seeks dismissal of Bogoraz's amended complaint, which seeks to "determine the rights of Bogoraz and Apogee under the Attorney Certification," Am. Compl. ¶ 21 and "to declare that Bogoraz is not in privity of contract with Apogee and owes no contractual duty to Apogee," *id.* ¶ 6. Bogoraz alleges that Apogee interprets the Certification as an "enforceable agreement creating a substantial financial obligation by Bogoraz[,]" while "Bogoraz interprets the Certification as a mere unilateral acknowledgement devoid of any elements of an enforceable contract." *Id.* ¶ 22. Bogoraz asks this Court to hold "that no contract exists between it and Apogee and resultantly there if [sic] no performance obligation by [Bogoraz] to Apogee." *Id.* ¶ 20.

Bogoraz's declaratory judgment claim and Apogee's breach of contract counterclaim both hinge on resolution of the same issue, *i.e.*, whether the Certification constitutes a binding contract.

A declaratory judgment claim may be dismissed where it seeks "resolution of [legal] issues that will, of necessity, be resolved in the course of the litigation of the other causes of action." *One Stop 34, LLC v. Stimdel Props. (FL), Inc.*, 19-CV-04011 (LDH) (PK), 2022 WL 985834, at *4 (E.D.N.Y. Mar. 31, 2022) (quoting *George & Co., LLC v. Spin Master Corp.*, 19-CV-04391 (RPK) (SJB), 2020 WL 7042665, at *5 (E.D.N.Y. Nov. 30, 2020)) (quotation marks and citation omitted); *see also Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 16-CV-6370 (SJF) (AYS), 2017 WL 6729854, at *11 (E.D.N.Y. Oct. 31, 2017), *aff'd*, 736 F. App'x. 274 (2d Cir. 2018) (second and third alterations in original) ("[C]ourts have deemed '[a] cause of action for a declaratory judgment [a]s unnecessary and inappropriate when the plaintiff has an adequate, alternative

16

remedy in another form of action, such as breach of contract.'") (quoting *J.C. Penney Corp. v. Carousel Ctr. Co.*, 635 F. Supp. 2d 126, 135 (N.D.N.Y. 2008)).

Here, resolution of Apogee's breach of contract counterclaim requires determining whether a valid contract exists, and thus will resolve the issue on which Bogoraz seeks declaratory judgment. Therefore, declaratory judgment on the issue of whether Plaintiff and Defendant were in privity of contract under the Certification would be duplicative. As such, declaratory judgment is inappropriate. Accordingly, the Court dismisses Bogoraz's First Amended Complaint because the complaint seeks only declaratory relief. That is, upon disposition of Apogee's breach of contract claim, Bogoraz will get the declaratory relief it seeks in the form of a judicial determination about whether the Certification constitutes an enforceable contract.

### 2. Apogee's Breach of Contract Counterclaim

Apogee argues that the Certification is a contract to which Bogoraz and Apogee are bound.

### a. Choice of Law

Texas or New York law could plausibly govern Apogee's breach of contract counterclaim. Where multiple states' substantive laws could govern, a federal court sitting in diversity will, ordinarily, apply the rule of its forum state to determine which law applies. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016); *see also* Apogee's 2/14/2025 Letter to the Court, ECF 55 ("Apogee's Letter") at 2 (citing *Zerman v. Ball*, 735 F.2d 15, 19 (2d Cir. 1984)).

Where, as here, the parties' contract contains an express choice of law provision, New York courts maintain that "[a]bsent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction." *United States v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020) (quoting *Int'l Minerals &*

17

*Res., S.A. v. Pappas*, 96 F.3d 586, 592 (2d Cir. 1996)) (quotation marks omitted).  Courts do not enforce choice of law agreements "where the chosen law violates some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." *Id.* (quoting *Brown & Brown, Inc. v. Johnson*, 25 N.Y.3d 364, 368, 34 N.E.3d 357, 360 (2015)).  Moreover, "courts are cautioned not to invoke this public policy exception lightly; rather, it should be reserved for those foreign laws that are truly obnoxious." *Id.* (internal quotations omitted).  New York courts generally enforce contractual choice of law clauses, maintaining that "contracts should be interpreted so as to effectuate the parties' intent." *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 470, 25 N.Y.S.3d 21, 45 N.E.3d 917 (2015) (citing *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624, 629, 825 N.Y.S.2d 692, 859 N.E.2d 498, 500 (2006)).  "In a case based on New York law, the United States Supreme Court held that a choice-of-law provision in a contract 'may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship.'" *Id.*  (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 59 (1995)).[6]

Here, the Agreement contains a choice of law provision designating Texas law as governing the Agreement and disputes that may arise therefrom.  The Agreement provides that "[i]n the event that there is a dispute regarding any of the matters covered in this Agreement[,] including but not limited to . . . *the amount owed* by the Claimant *to Apogee Capital Fund 5, LLC*, *or any other disputes*, the disputes will be resolved according to the law of the State of Texas."  Agreement at

---

[6] "This general rule applies even to issues of contract validity and the parties' ability to execute the agreement containing the choice-of-law clause.  *See IRB-Brasil*, 20 N.Y.3d at 313, 316, 958 N.Y.S.2d 689, 982 N.E.2d 609 (applying New York substantive law to evaluate the argument that the purported contract was void under foreign law because the board of directors never authorized it in accordance with foreign law)." *Petróleos de Venez. S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 472 (2d Cir. 2022), *certified question accepted*, 39 N.Y.3d 960, 199 N.E.3d 897 (2022), and *certified question answered*, 41 N.Y.3d 462, 235 N.E.3d 949 (2024).

6 (emphases added).  The Certification pertains to the Agreement and obligates the signing attorney to "distribute any proceeds arising from the [c]laim in accordance with the terms of the Agreement."  Certification.  The Certification is appended to the Agreement and Bogoraz agreed to act in accordance with the Agreement.  *See id.*; Agreement.  Construed together, these facts indicate that a dispute as to the validity of the Certification qua contract is a dispute that arises, in part, from the underlying Agreement.

Moreover, Texas has sufficient contacts with the transaction and no public policy exception applies.  Bogoraz's letter submission does not address the contractual choice of law provision.  *See* Bogoraz's 2/14/2025 Letter to the Court, ECF 54 ("Bogoraz's Letter").  Apogee explains why none of the exceptions to the New York rule that allows choice of law provisions to control apply.  Apogee's Letter at 2-3.  Texas has sufficient contacts with the transaction because Apogee's principal place of business is located there, the Agreement was negotiated in Texas, Apogee's quarterly statements were sent from Texas, Apogee's payment was to be delivered to its Texas office, and John executed the Agreement and Bogoraz executed the Certification with a Texas notary as witness.  *Id.*[7] at 3.  Apogee further argues that New York public policy is not violated by applying Texas law because the only difference between the jurisdictions' laws is that Texas law

---

[7] Apogee's assertions regarding the notary are the subject of Bogoraz's motion to strike a portion of Apogee's letter to the Court.  *See* Mot. to Strike.  The Court considers the motion under its inherent authority to strike.  *Penzo v. Consol. Edison Co. of N.Y., Inc.*, 19-CV-7478, 2024 WL 3824072, at *16 (S.D.N.Y. Aug. 15, 2024) (citation omitted) ("Although [Federal Rule of Civil Procedure 12(f)] does not expressly authorize the striking of documents other than pleadings, a district court has 'inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances.'").  Bogoraz asserts that "[t]he statement that John's execution of the Agreement was witnessed by a Texas notary under the supervision of Bogoraz' [sic] principal Karine Bogoraz is false.  No Texas notary witnessed John's signature because John signed the Agreement with Apogee via electronic signature while physically in the offices of Bogoraz in New York."  Mot. to Strike at 2.  Bogoraz is incorrect.  Based on the Court's review of the Agreement, Bogoraz and John connected with a Texas Notary through a website called NotaryLive.com which allows users to upload their document, verify their identity, and connect with a live notary via video call during which the user signs the document electronically, the notary witnesses the signature, and the notary applies their electronic seal.  Apogee never asserted that John or Karine Bogoraz was physically in Texas.  Instead, Apogee asserted that the execution of these documents was *witnessed by* a Texas notary.  Accordingly, the Court denies Bogoraz's motion to strike.

offers "[t]he prospect of greater recovery" in the form of attorney's fees and exemplary damages, which are not available under New York law. *Id.*

Therefore, because the Agreement contains a choice of law clause designating Texas law as controlling, Texas state has had sufficient contact with the underlying transaction, and the Court is aware of no fraud or public policy reason to decline to enforce the clause, Texas law governs the Certification.

### b.  Applying Texas Law

Under Texas law, to prove a breach of contract claim, a litigant must show: (1) the existence of a valid contract; (2) performance or tendered performance by the litigant; (3) breach of contract by the opposing party; and (4) damages sustained by the litigant because of the breach. *See Mullins v. TestAmerica Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App. 2005)).

To be entitled to summary judgment, Apogee, as movant, must show there is no genuine issue of material fact as to each element of its breach of contract claim. *Fulbright & Jaworski, L.L.P. v. Mariner Health Care, Inc.*, SA-05-CA-1127-FB, 2006 WL 4007923, at *9 (W.D. Tex. May 22, 2006); *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Apogee "must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact material to resolution of the motion." *Fontenot*, 780 F.2d at 1194. "[I]f the movant bears the burden of proof on an issue [as Apogee does here], . . . he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Id.*

The Court evaluates whether Apogee has satisfied its burden on the first element of the breach of contract claim: validity. Under Texas state law, a valid contract exists if there is "(1) an offer; (2) an acceptance in strict compliance with terms of [the] offer; (3) a meeting of the

minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent it become mutual and binding on both parties; and [6] consideration." *Owens v. Specialized Loan Servicing, L.L.C.*, 694 Fed. App'x 950, 953 (5th Cir. 2017) (quoting *Advantage Physical Therapy*, *Inc*. *v. Cruse*, 165 S.W.3d 21, 24 (Tex. App. 2005)) (quotation marks omitted).  Although "contract formation is a question of fact under Texas law," summary judgment is appropriate if no issues of material fact exist. *Westport Ins. Corp. v. Pa. Nat'l Mut. Cas. Ins. Co.*, CV H-16-1947, 2018 WL 6313478, at *32 (S.D. Tex. Aug. 31, 2018), *report and recommendation adopted*, CV H-16-1947, 2018 WL 4691239 (S.D. Tex. Sept. 28, 2018), *aff'd*, 117 F.4th 653 (5th Cir. 2024) (quoting *Delta Brands, Inc. v. Wysong & Miles Co.*, 203 F.3d 828, 1999 WL 1240802, at *1 (5th Cir. 1999)).  "[T]he elements for the formation of a contract, whether written, oral, or implied, are the same.  *Cokinos Energy, L.L.C. v. Herbert J. Sims & Co.*, 23-CV-2432, 2024 WL 4534746, at *2 (S.D. Tex. Oct. 21, 2024) (citations omitted).

Apogee argues that the Certification constitutes a valid and binding contract because there was consideration.  Apogee's Mem. at 4-5, 12-13.  Apogee argues that when it agreed to advance funds to John, Bogoraz assumed an obligation to distribute funds pursuant to the Agreement.  *Id.* In exchange, Bogoraz had additional time to litigate John's personal injury suit, allowing the firm to obtain a more favorable settlement and thus contingency fee.  *Id.* at 13.  Consideration can exist in the form of either "a benefit to the promisor or a detriment to the promisee."  *Goins v. Ryan's Fam. Steakhouses, Inc.*, 181 F. App'x 435, 437 (5th Cir. 2006) (quoting *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991)).  Apogee asserts that "[r]elying on the expertise and competence of Bogoraz, Apogee advanced funds to its detriment as a promisee.  This exchange of a promise for a promise is sufficient consideration to form a valid and binding agreement between Apogee and Bogoraz."  Apogee's Mem. at 13.  The Court agrees.

However, Apogee has not established other elements of a valid contract, such as meeting of the minds. "'Meeting of the minds' describes [] mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *Bandera Cnty. v. Hollingsworth*, 419 S.W.3d 639, 645 (Tex. App. 2013). The meeting of the minds determination "is based on the objective standard of what the parties said and did and not on their subjective state of mind." *In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App. 1999)). One essential element, "without which no contract can exist, is the parties' intent to be legally bound to the contract's terms." *Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 730 (Tex. 2020) (quoting *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 63 (Tex. 2014)); *see also FPL Energy, LLC*, 426 S.W.3d at 63 (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)) ("Our primary concern in contract interpretation is to 'ascertain the true intentions of the parties as expressed in the instrument.'"). Apogee does not assert that Apogee and Bogoraz had a meeting of the minds. *See generally* Apogee's Mem.

Apogee's 56.1 Statement does not assert facts or point to any evidence in the record demonstrating that there was a meeting of the minds between Bogoraz and Apogee. The Court's review of the record shows that Bogoraz and Apogee did not reach a meeting of the minds as to the material terms of the Certification. Karine Bogoraz's affirmation attesting that she "agree[s] to distribute any proceeds arising from [John's lawsuit] in accordance with the terms of the Agreement," alone, is insufficient to entitle Apogee, the party bearing the burden of proof, to judgment as a matter of law. *See* Agreement. Instead, the evidence in the record demonstrates that Apogee and Karine Bogoraz had materially different understandings of their agreement and did not "agree to do the same thing, in the same sense, at the same time." *Thang v. Defy Int'l, LLC*, 14-CV-22-00752, 2025 WL 212076, at *13 (Tex. App. Jan. 16, 2025) (citation omitted).

Consequently, the Court concludes that there was no meeting of the minds with respect to the Certification, and therefore the Certification was not a contract.

Apogee relies on *P.S. Fin., LLC* to support its position that a contract existed where the court treated an attorney acknowledgment that accompanied an agreement to pay as a contract and interpreted its terms. *P.S. Fin., LLC v. Eureka Woodworks, Inc.*, 214 A.D.3d 1, 25 (N.Y. App. Div. 2023). However, *P.S. Fin. LLC* is of limited relevance as a comparator because, unlike here, the parties did not dispute that the attorney acknowledgment constituted a contract. *See generally id.*

Because Apogee has failed to satisfy one of the elements to establish that a valid contract existed and therefore has not established that the Certification was a contract, Apogee necessarily failed to establish that it is entitled to judgment as a matter of law with respect to its breach of contract claim.

Therefore, the Court denies Apogee summary judgment on its breach of contract counterclaim and grants Bogoraz summary judgment in the form of a judicial determination that it was not in privity of contract with Bogoraz.[8]  Accordingly, Apogee's breach of contract counterclaim is dismissed.

---

[8] When "it is clear that all of the evidentiary material a party might submit is before the court" and plaintiff was "on notice that [it] had to come forward with all of [its] evidence," sua sponte summary judgment may be appropriate. *See Pugh v. Goord*, 345 F.3d 121, 124 (2d Cir. 2003) (alterations in original) (quoting *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114 (2d Cir. 1999)); *id.* (citing *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)). Although Bogoraz did not move for summary judgment on Apogee's breach of contract counterclaim, because Bogoraz's declaratory judgment claim and the contractual validity element of Apogee's breach of contract counterclaim are mirror images of each other, the Court sua sponte grants summary judgment to Bogoraz under Federal Rule of Civil Procedure 56(f)(1). Rule 56(f)(1) provides that "[a]fter giving notice and a reasonable time to respond, the court may []grant summary judgment for a nonmovant . . . ."

### 3. Promissory Estoppel

Having found that no contract exists, the Court determines whether Apogee is entitled to summary judgment on its promissory estoppel counterclaim.

### a. Choice of Law

Apogee argues that Texas law also applies to its promissory estoppel counterclaim because "The broad scope of the choice of law provision in the Agreement covers disputes arising from the Agreement 'or any other disputes.' Thus, equitable claims such as promissory estoppel are covered under the broad language of the Agreement's choice of law provision." Apogee's Letter at 2 (citations omitted). Contractual choice of law provisions do not apply to "extra-contractual" claims, like equitable claims for promissory estoppel, unless the provision's language is sufficiently broad to encompass the parties' entire relationship. *See CUnet, LLC v. Quad Partners, LLC*, 16-CV-6327 (CM), 2017 WL 945937, at *6 (S.D.N.Y. Mar. 7, 2017); *In re Lois/USA, Inc.*, 264 B.R. 69, 98 (Bankr. S.D.N.Y. 2001) (collecting cases). Nonetheless, because the choice of law provision in the Agreement is sufficiently broad,[9] the Court applies Texas law to Apogee's promissory estoppel counterclaim.

### b. Applying Texas Law

Apogee argues that it "reasonably relied on the representation of [Bogoraz]. . . that the law firm would distribute the settlement funds pursuant to the terms of the Agreement." Apogee's Mem. at 19. In response, Bogoraz argues that the reasonableness of Apogee's reliance is a question

---

[9] The choice of law provision in the Agreement reads: "In the event that there is a dispute regarding any of the matters covered in this Agreement, including but not limited to . . . the amount owed by the Claimant to Apogee Capital Fund 5, LLC, *or any other disputes*, the disputes will be resolved according to the law of the State of Texas." Agreement at 6 (emphasis added). Therefore, the parties have agreed to be bound by a broad choice of law provision that covers disputes arising from the Agreement. The choice of law provision's language is similar to language in other cases where the Second Circuit has found the choice of law language sufficiently broad to encompass tort claims. *See Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309-10 (2d Cir. 1994) (explaining that "a provision that covers any controversy 'arising out of or relating to'" an agreement is "sufficiently broad" to cover non-contract claims).

of fact that would preclude summary judgment.  Bogoraz's Opp. at 19.  Moreover, Bogoraz argues that Apogee's heavy reliance on Bogoraz was unreasonable because, as a backstop, the Agreement obligated John to pay Apogee if Bogoraz did not.  *Id.*  ("Claimant shall be obligated immediately upon receipt of the proceeds from the [c]laim to pay to Apogee Capital Fund 5, LLC, the amounts due.").  Apogee's reply brief does not address Bogoraz's argument on this counterclaim.

Texas has adopted the doctrine of promissory estoppel as set forth by the RESTATEMENT OF CONTRACTS § 90 (1932).  *Wheeler v. White*, 398 S.W.2d 93 (Tex. 1965).  Section 90 provides:

> A promise which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise.

RESTATEMENT OF CONTRACTS § 90 (1932).

Under Texas state law, promissory estoppel can serve as an independent cause of action when a plaintiff unsuccessfully asserts a breach of contract claim.  *Alvarado v. PNC Bank Nat'l Ass'n*, 660 F. Supp. 3d 612, 619 (S.D. Tex. 2023) (citations omitted).  "The elements of a promissory-estoppel claim are (1) a promise; (2) foreseeability of reliance by the promisor; (3) actual, substantial, and reasonable reliance by the promisee to its detriment; and (4) injustice that can be avoided only by enforcement of the promise."  *Id.* (citations omitted).

The first element is met here because the Certification constitutes a promise.  *C.f. Fretz Const. Co. v. S. Nat. Bank of Houston*, 626 S.W.2d 478, 482-83 (Tex. 1981) (finding that an assurance made by a bank to a contractor, who was concerned that his client may not pay him, to protect and hold onto the money the contractor would be owed if the contractor performed, was "[a] promise to protect another's interest" and therefore promissory estoppel was applicable).  Moreover, Bogoraz does not dispute that the Certification constitutes a "promise."  *See generally* Bogoraz's Opp.

25

The second element—foreseeability of reliance—is also met. Bogoraz at the very least knew of the Certification because it signed the Certification promising to "distribute proceeds arising from the [c]laim in accordance with the Agreement." Certification. Apogee asserts that it relied on Bogoraz's promises and this reliance was foreseeable based on Apogee's inclusion of the Certification. Apogee's Mem. at 19. Bogoraz attempts to defeat this element by summarily asserting that "foreseeable reliance" is absent from Apogee's motion. Bogoraz's Opp. at 20. But Bogoraz makes no argument and points to no evidence in support of its conclusion that Apogee's reliance was not foreseeable. *See generally id.* Bogoraz contemplated or should have contemplated that Apogee would rely on the terms and conditions of the Certification. *See Fretz Constr. Co.*, 626 S.W.2d at 480-81 (explaining that a bank's promise to set up a special fund to pay for a contractor's work made it foreseeable that the contractor would rely on the promise and perform the work). *Compare id. with Henderson v. Tex. Com. Bank*, 837 S.W.2d 778, 782 (Tex. App. 1992) (finding no evidence that bank could foresee debtor would rely on negotiations without meeting loan conditions).

The parties also dispute whether Apogee has satisfied the third element: "actual, substantial, and reasonable reliance by the promisee to its detriment." *Alvarado*, 660 F. Supp. 3d at 619. As to actual reliance, Apogee asserts that it "relied on" Bogoraz's promises "stating that the law firm would distribute the settlement funds pursuant to the terms of the Agreement." Apogee's Mem. at 19. That Apogee sent funds to John constitutes evidence of Apogee's actual reliance.

Apogee's reliance was not only actual, but also substantial and reasonable. Reliance is substantial if the plaintiff can show that but for the promise, the plaintiff would not have acted or would have refrained from acting. *See Eng. v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983) ("The

record shows that the [] acts taken . . . in reliance upon [an] agreement" constitute substantial reliance—not actions that "would necessarily have been done whether the [promise was made] or not."). Apogee asserts that it "relied on the representation of a New York law firm," and "further rel[ied] on the expertise and competence of Bogoraz to manage the [c]laim and pay as agreed." Apogee's Mem. at 19. The Agreement itself states that "Apogee Capital Fund 5, LLC has also based its decision to enter into [the] Agreement on the expertise and competence of [John's] attorneys." Agreement at 6. Apogee relied on Bogoraz's promise, as outlined in the Certification, in deciding to make an investment of more than $20,000. Therefore, the Court finds Apogee's reliance on the Certification to be reasonable.

Bogoraz, however, contends that "whether it was 'reasonable' for Apogee to rely on Bogoraz's acceptance of the ministerial duty of disbursement of funds per the Agreement . . . is a fact question that would preclude summary judgment." Bogoraz's Opp. at 19. The Court is not persuaded by Bogoraz's suggestion that it was unreasonable for Apogee to rely on a sophisticated party's representations in a written agreement, attached to a contract, especially where that party is subject to specific ethical standards and is a party with whom Apogee had other dealings. Bogoraz, seemed to insinuate that it is unreasonable to rely on its own representations. To the contrary, it is reasonable for a business to rely on promises made by lawyers who, as part of a heavily regulated profession, are held to ethical and professional standards.

Bogoraz does not dispute the fourth element of a promissory estoppel claim or contend that this "injustice" can be avoided via means other than the "enforcement of the promise." *Alvarado*, 660 F. Supp. 3d at 619.

Therefore, Apogee has established that there is no genuine dispute of fact as to whether Apogee's reliance was "actual, substantial, and reasonable," to Apogee's detriment, and thus Apogee is entitled to judgment as a matter of law on its promissory estoppel counterclaim.

### 4. Attorney's Fees

The Court now determines whether the promissory estoppel counterclaim entitles Apogee to attorney's fees.  Apogee seeks attorney's fees pursuant to Texas Civil Practice & Remedies Code Section 38.001.[10]  Apogee's Mem. at 18.  Section 38.001 provides that:

> (b) A person may recover reasonable attorney's fees from an individual or organization other than a quasi-governmental entity authorized to perform a function by state law, a religious organization, a charitable organization, or a charitable trust, in addition to the amount of a valid claim and costs, if the claim is for:
> . . .
> (8) an oral or written contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2021).  In support of its counterclaim for attorney's fees, Apogee cites a Fifth Circuit case which liberally construed attorney's fees to include actions for promissory estoppel.  *See* Apogee's Mem. at 19-20 (citing *Preload Tech., Inc. v. A.B. & J. Const. Co.*, 696 F.2d 1080, 1093 (5th Cir. 1983)).  Indeed, the Fifth Circuit has construed Section 38.001 to permit recovery of attorney's fees on a successful promissory estoppel claim, *see Preload Tech.*, 696 F.2d at 1095 & n.23, and the weight of authority in Texas permits an award of attorney's fees under Section 38.001(8) of the Texas Civil Practice & Remedies Code for a promissory estoppel claim.  *See Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 528 (Tex. App. 11th 2015) (authorizing such fees) (collecting cases); *see also Corpus Christi Day Cruise, LLC v. Christus Spohn Health Sys. Corp.*, 398 S.W. 3d 303 (Tex. App. 13th 2012) (holding that attorney's fees are available for a promissory estoppel claim pursuant to Section 38.001 of the Texas Civil

---

[10] As described above, because the scope of the Agreement's choice of law provision is so broad, it applies to the attorney's fees analysis.  Thus, the Court looks to Texas law to determine whether to award attorney's fees.

Practice & Remedies Code); *MedFinManager, LLC v. Salas*, 04-20-00051-CV, 2021 WL 3742681, at *7 (Tex. App. 4th Aug. 25, 2021) (holding that the trial court erred by not awarding attorney's fees under Section 38.001 to a party that prevailed on a promissory estoppel claim).

To recover attorney's fees under Section 38.001, the claimant: (1) must be represented by an attorney; (2) must present the claim to the opposing party or to an authorized agent of the opposing party; and (3) before the expiration of thirty days after the claim is presented, the opposing party must not tender payment for the just amount owed. § 38.001. If a party establishes these three elements *and* prevails on a claim founded on a written or oral contract, an award of reasonable attorney's fees is mandatory. *See Welch v. Hrabar*, 110 S.W.3d 601, 610 (Tex. App. 2003) (citing *Cale's Clean Scene Carwash, Inc. v. Hubbard*, 76 S.W.3d 784 (Tex. App. 2002)); *Jackson Law Office, P.C. v. Chappell,* 37 S.W.3d 15, 23-24 (Tex. App. 2000). "A trial court has discretion to set the amount of attorney's fees, but it does not have the discretion to completely deny attorney's fees if they are proper under [S]ection 38.001." *Manson v. Avery ex rel. Est. of Hodges*, 04-01-00207-CV, 2002 WL 459740, at *2 (Tex. App. Mar. 27, 2002) (citing *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 683 (Tex. App. 1998); *see Essex Crane Rental Corp. v. Striland Constr. Co., Inc.*, 753 S.W.2d 751, 758 (Tex. App. 1988).

Here, Apogee has established that it was represented by an attorney, that it presented its claim against Bogoraz to Bogoraz by several letters demanding full payment of the amount owed months prior to filing any action, and that neither Bogoraz nor John tendered payment for the full amount owed to Apogee. *See Sadoskas v. Sadoskas*, 13-02-216-CV, 2003 WL 21666115, at *3 (Tex. App. July 17, 2003) (explaining that no particular form of presentment is required and demanding the opposing party's performance under a contract is sufficient to constitute presentment and collecting cases establishing same); *see* Declaration of Peter Rood Ex. 5, January

13, 2022 Email Exchange, ECF 48-7; Declaration of Peter Rood Ex. 6, December 16, 2021 Email Exchange, ECF 48-8; Declaration of Peter Rood Ex. 7, March 28, 2022 Email Exchange, ECF 48-9. In sum, Apogee satisfied the requirements under Chapter 38 for attorney's fees.

An award of attorney's fees must be "reasonable" under Chapter 38. Usually, the reasonableness of attorney's fees is a question of fact. *See Int'l Sec. Life Ins. Co. v. Spray*, 468 S.W.2d 347, 349 (Tex. 1971); *Grace v. Duke*, 54 S.W.3d 338, 344 (Tex. App. 2001)). However, when a claimant presents attorney testimony regarding fees that "is uncontroverted, clear, direct and positive, and not contradicted by any other witness or attendant circumstances, and there is nothing to indicate otherwise, [the Court] may construe the evidence as true as a matter of law and render judgment for attorney's fees." *Sadoskas*, 2003 WL 21666115, at *3 (collecting cases).

Here, Apogee filed the Affidavit of Nelson Stewart in Support of Reasonable and Necessary Attorney's Fees, consisting of more than 200 pages of records showing Apogee's counsel's billing rates, hourly expenditures, and activities related to this suit, including copies of Apogee's attorneys' billing records through July 6, 2024. *See* Stewart Aff. Apogee contends that $181,951.07 in attorney's fees and $9,534.41 in costs "is reasonable and necessary for the defense of this action for the time period from April 2022 through June 2024." *Id.* at 6.

Where a case is disposed of at summary judgment, attorney's fees are awarded only if "the summary judgment evidence conclusively establishes the amount to which the movant is entitled." *Universal MRI & Diagnostics, Inc. v. Med. Lien Mgmt. Inc.*, 497 S.W.3d 653, 663 (Tex. App. 2016) (citing to *Auz v. Cisneros*, 477 S.W.3d 355, 359 (Tex. App. 2015)). There is no contradicting testimony or other evidence that this amount is unreasonable. Bogoraz does not contest this amount in its opposition and there is no evidence in the record controverting the reasonableness of this amount. Because Apogee's evidence is "uncontroverted, clear, direct and positive, and not

contradicted by any other witness or attendant circumstances, and there is nothing to indicate otherwise," the Court construes the evidence as true as a matter of law. *Welch*, 110 S.W.3d at 610.

Thus, the Court awards Apogee $181,951.07 in attorney's fees and $9,534.41 in costs.

### C.  Non-Contractual Claims

Apogee asserts counterclaims for conversion, tortious interference with contract, liability under New York Judiciary Law § 487, and punitive damages.  Apogee asserts that its tort claims against Bogoraz arise from a duty independent of Bogoraz's contractual obligations.  *See* Apogee's Mem. at 22-24.  Apogee explains that a "breach of contract can also be a breach of an independent duty in tort" when the defendant acts in a way that a trier of fact could infer "was intended to harm the plaintiff."  *Id.* at 22.  The Court agrees.  *See Albemarle Theatre, Inc. v. Bayberry Realty Corp.*, 27 A.D.2d 172, 177, 277 N.Y.S.2d 505 (App. Div. 1967) (holding that defendants' conduct constituted not only a breach of [defendants'] contract with the plaintiff, but also a "violation of their legal common-law duty extraneous to the contract not to act willfully to destroy the property of another, including the plaintiff."); *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003), *certified question answered*, 3 N.Y.3d 182, 818 N.E.2d 1100 (2004) ("Carvel did not merely violate an express or implied obligation entailed in the franchise agreements, but . . . went further, violating an independent duty in tort by willfully causing damage to appellees [sic] prospective business relationships.").

Under New York law, a breach of contract can be considered a tort when a legal duty independent of the contract itself has been violated.  *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190, 193 (1987).

> Such a "legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract."  *Id.*  Where an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same

31

allegedly wrongful conduct. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898-99 (2d Cir.1980) (citing *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 408, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958)). If, however, the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative. *See, e.g.*, *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995).

*Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012).

The Court addresses each of Apogee's tort claims in turn.

### 1. Conversion

Apogee failed to provide the Court with a choice of law analysis on its conversion claim, even though the Court provided Apogee multiple opportunities to do so. Bogoraz, on the other hand, argues that New York law should apply to this counterclaim because Apogee relies more heavily on New York law in asserting the counterclaim in its brief, Apogee's Mem. at 20, and in its reply, Apogee's Reply at 7-8, and Apogee does not assert that Bogoraz's opposition relied on the wrong state's law in its reply, *id.* Therefore, because the parties do not dispute that New York law should apply, this Court applies New York law. *See Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 771 (S.D.N.Y. 2011) ("Because all parties have relied on New York State law in their memoranda of law, they have implicitly consented to the application of New York law. This "implied consent . . . is sufficient to establish choice of law.' *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)").

Apogee argues that Bogoraz's refusal to pay Apogee under the Agreement constitutes conversion as a matter of law. Conversion occurs when a party "intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50, 860 N.E.2d 713 (2006) (citing *State v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d

249, 774 N.E.2d 702 (2002)).  To establish a claim for conversion, a plaintiff must show that (1) they have a "possessory right or interest in the property," and (2) that defendant had "dominion over the property" or otherwise interfered with it, in violation of plaintiff's rights.  *Id.*

Bogoraz contends that Apogee has not met its burden as to each element of its conversion claim.  Specifically, Bogoraz argues that Apogee cites cases that are distinguishable because the attorneys in the cited cases "failed to tender *any* of the assigned funds" whereas here, Bogoraz tendered *a portion* of the funds.  Bogoraz's Opp. at 21-22.  Bogoraz also argues that even under "extreme facts" like where "no payment was made or attempted," a claimant is not necessarily "entitled to summary judgment for the relief sought."  *Id.*

Bogoraz's attempt to distinguish *Korn v. Sacco & Fillas, LLP*, 189 A.D.3d 624, 134 N.Y.S.3d 713 (App. Div. 2020) and *Leon v. Martinez*, 193 A.D.2d 788, 598 N.Y.S.2d 274 (App. Div. 1993), *aff'd*, 84 N.Y.2d 83, 638 N.E.2d 511 (1994) is unpersuasive because the portion of the total funds that the attorneys failed to distribute was not dispositive.  That is, the courts did not suggest that if the lawyers had remitted some, but not all, of the proceeds owed, the lawyers would not have been liable for conversion.  In those cases, the possibility of conversion liability turned not on an assessment of the share of total funds that were remitted, but on (1) whether an attorney had notice "of an assignment or a portion of their client's claim for personal injuries," and (2) whether that attorney "pa[id] out money in disregard of the assignment."  *Leon*, 193 A.D.2d at 789, 598 N.Y.S.2d at 275.  Here, Bogoraz had notice that a portion of John's settlement was assigned to Apogee and Bogoraz paid out money in disregard of that assignment.

Apogee has established that it had a "possessory right or interest" in the full amount owed pursuant to the Agreement, and that Bogoraz's dominion or control over the distribution of funds

33

interfered with Apogee's access to the funds, in derogation of Apogee's rights.  For these reasons, the Court grants Apogee's motion for summary judgment as to its conversion counterclaim.

### 2. Tortious Interference[11]

Apogee asserts a tortious interference counterclaim under New York and Texas law.[12] Apogee argues that Bogoraz tortiously interfered with the contractual obligations John owed to Apogee.  In support of its argument, Apogee notes the following:

> Bogoraz reviewed the Agreement with John and was therefore aware of the Agreement and its terms.  In the PI Breakdown submitted to John for signature and approval, Bogoraz deliberately misrepresented the amount owed to John as a 'Negotiated Amount' knowing that amount has not been accepted by Apogee and was not the full amount owed.  By intentionally misrepresenting the amount owed to John[,] Bogoraz willfully induced John to breach her obligations under the Agreement by agreeing to the distribution of a Check that was substantially less than the amount she agreed to pay.

Apogee's Mem. at 22.

Again, Apogee failed to supplement its argument by providing the Court with a choice of law analysis regarding Apogee's tortious interference counterclaim.  Bogoraz cites only New York law, *see* Bogoraz's Opp. at 22-23, while Apogee cites both New York and Texas state law in its

---

[11] "Because tortious interference claims are based on acts of third parties, the allegedly tortious conduct constitutes a breach of a legal duty independent of the contract."  *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998) (citing *See S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 489 N.Y.S.2d 478, 480-81, 108 A.D.2d 351, 354-55 (App. Div. 1985)).

[12] Apogee asserts that "[u]nder Texas law, a breach of contract can also [be] tortious interference if 'it is done with a purpose and effect of preventing the third party from performing its contract with another.'"  Apogee's Mem. at 22 (citations omitted).  In support of its position, Apogee argues that Bogoraz "knew it distributed a [c]heck that was incorrect."  *Id.*  Apogee also asserts that Bogoraz "procured the breach to distribute all settlement funds without prior notice to Apogee and thereby pressure Apogee into accepting a lower payment amount," which is an "intent to coerce a more favorable settlement by injuring Apogee's business."  *Id.* at 22-23.  It is unclear how this counterclaim is distinct from the counterclaim Apogee asserts, largely under New York law in Section VIII of Apogee's memorandum of law in support of its motion for summary judgment: "Bogoraz Tortiously Interfered With the Contractual Obligations John Owed to Apogee."  This counterclaim contends that Bogoraz "procured [John's] breach," *id.* at 22, and the other counterclaim contends that Bogoraz "deliberately misrepresented" the amount John owed to induce John to breach her obligations under the Agreement.  *Id.*  This counterclaim merely seems to go a bit further by offering a rationale for Bogoraz's purported actions: "to coerce a more favorable settlement by injuring Apogee's business."  *Id.* at 23.

brief, *see* Apogee's Mem. at 21.  However, in its supplemental letter, Apogee does not dispute that New York law should apply.  Therefore, the Court applies New York law.  *See Great Am. Ins. Co. v. AIG Specialty Ins. Co.*, 21-1298 (L), 2022 WL 17587851, at *1 n.1 (2d Cir. Dec. 13, 2022) ("Under New York choice-of-law rules, where the parties agree that a certain jurisdiction's law controls, this is sufficient to establish choice of law.") (citing *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016) (cleaned up)).

Under New York law, to establish a tortious interference with contract claim, a plaintiff must prove: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom."  *CAC Grp. Inc. v. Maxim Grp. LLC*, 523 F. App'x 802, 806 (2d Cir. 2013) (quotations omitted) (citations omitted).

Apogee has established the first two elements based on the record evidence at summary judgment.  The parties do not dispute that the Agreement constituted a valid contract between John and Apogee.  Additionally, the Certification indicates that Karine Bogoraz reviewed the Agreement with John and was therefore aware of the Agreement and its terms.

However, Apogee has not established that the third element is met—that is, that Bogoraz *intentionally* procured John's breach without justification.  To establish intentional procurement of breach, "'it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead a plaintiff must allege facts showing that the defendant's objective was to procure such a breach.'"  *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 212 (W.D.N.Y. 2021) (internal quotations omitted) (citations omitted).  "A defendant must specifically intend to interfere with the

35

relevant contract." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 328 (S.D.N.Y. 2017) (citing *Am. Cyanamid Co. v. Elizabeth Arden Sales Corp.*, 331 F.Supp. 597, 608 (S.D.N.Y. 1971)).

Apogee contends that Bogoraz, in the PI Settlement Breakdown, "deliberately misrepresented the amount owed to John as a 'Negotiated Amount' knowing that amount had not been accepted by Apogee and was not the full amount owed." Apogee's Mem. at 22. Apogee argues that "[b]y intentionally misrepresenting the amount owed to John[,] Bogoraz willfully induced John to breach her obligations under the Agreement by agreeing to the distribution of a Check that was substantially less than the amount she agreed to pay." *Id.* Bogoraz pushes back by noting that "Apogee assumes (without any summary judgment evidence) that Bogoraz's notation of 'Negotiated Amount' implied that [Bogoraz communicated that] Apogee agreed to a reduction in the amount owed." Bogoraz's Opp. at 23. Bogoraz notes that the "issue of whether Bogoraz made a misrepresentation to John at all is without summary judgment evidence, and therefore a disputed issue of fact for the jury." *Id.*[13] The Court agrees.

The Court concludes that Apogee has failed to meet its burden as to Bogoraz's "intention" to procure John's breach. Apogee has established that Bogoraz presented the PI Settlement Breakdown to John for her signature and that the PI Settlement Breakdown listed $29,617.94 as the amount owed to Apogee, which was $7,107.82 less than the amount owed as of the date the PI Settlement Breakdown was executed. However, Bogoraz's presentation to John of a deficient amount in the PI Settlement Breakdown, and Bogoraz's acknowledgment that it presented an amount lower than the amount dictated by the Agreement, without more, is insufficient for the

---

[13] On August 28, 2024, Bogoraz filed a motion for sanctions against Apogee for "making false statements in its Motion for Summary Judgment," specifically by suggesting that Bogoraz "fabricated that Apogee 'negotiated' and therefore agreed to accept a lesser dollar amount from John to Apogee." *See* Mot. for Sanctions at 1. The Court addresses Bogoraz's motion for sanctions below.

Court to find that Bogoraz's *objective* in writing a lower number was to procure John's breach of the Agreement.

Therefore, the Court denies summary judgment on Apogee's tortious interference with contract counterclaim.

### 5. Liability Under New York Judiciary Law § 487

Apogee seeks summary judgment on its counterclaim alleging that Bogoraz committed attorney misconduct, violating New York Judiciary Law § 487, rendering "Bogoraz [] liable to John and Apogee under [New York Judiciary Law § 487] for treble damages and legal fees." Apogee's Mem. at 24.

New York Judiciary Law §487 governs attorney misconduct and provides "for a private civil cause of action for treble damages against lawyers who deceive any party or the court." *Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 408 (S.D.N.Y. 2000).  Specifically, the law provides that an attorney or counselor who:

1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,

2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

N.Y. JUD. LAW § 487 (McKinney).

To establish a claim under New York Judiciary Law § 487, a plaintiff must show, at a bare minimum, that the defendant "(1) [is] guilty of deceit or collusion, or consent[ed] to any deceit or collusion; and (2) had an intent to deceive the court or any party." *Bryant v. Monaghan*, 15-CV-8427 (PAC) (HBP), 2016 WL 11272143, at *9 (S.D.N.Y. Dec. 16, 2016), *report and*

*recommendation adopted sub nom. Bryant v. Silverman*, 15-CV-8427 (PAC) (HBP), 2017 WL 887043 (S.D.N.Y. Mar. 6, 2017) (alteration in original) (collecting cases). "[T]he alleged deceit forming the basis for . . . a cause of action [under Section 487], if it is not directed at a court, must occur during the course of a pending judicial proceeding." *Nicholson v. Forster & Garbus LLP*, 11-CV-0524 (SJF) (WDW), 2012 WL 273150, at *2 (E.D.N.Y. Jan. 30, 2012) (*quoting Costalas v. Amalfitano*, 305 A.D.2d 202, 204, 760 N.Y.S.2d 422 (N.Y. App. Div. 2003)). Liability under Section 487 "does not depend on whether the court or party to whom the statement is made is actually misled by the attorney's intentional false statement." *Bill Birds, Inc. v. Stein L. Firm, P.C.*, 35 N.Y.3d 173, 178, 149 N.E.3d 888, 891 (2020). Additionally, courts have held that to sustain a cause of action under Section 487, plaintiff must allege a "chronic extreme pattern of legal delinquency." *Mackley v. Sullivan & Liapakis, P.C.*, 98-CV-4860 (SWK), 1999 WL 287362, at *3 (S.D.N.Y. May 7, 1999) (citing *Est. of Steinberg v. Harmon*, 686 N.Y.S.2d 423, 1999 WL 133258, at * 1 (N.Y. App. Div. Mar. 11, 1999)). "[T]o recover under [S]ection 487, a plaintiff must plead and prove both actual deceit by the attorney, and causation, that is, that the deceit or collusion actually caused plaintiff's damages." *Schweizer*, 93 F. Supp. 2d at 408 (citations omitted).

In support of its contention that Bogoraz violated Judiciary Law §487, Apogee asserts that Bogoraz (1) "misrepresented to . . . its client, John [before she signed the PI Breakdown] that the amount stated in the PI Breakdown was a 'Negotiated Amount,'" (2) "deceived the Office of Court Administration of the State of New York by submitting a form on January 26, 2022 that claimed Apogee had been paid $29,617.95 . . . [and] Bogoraz knew this statement was false," and (3) "has

also repeatedly misrepresented to this Court and the District Court of Travis County, Texas, that the [$29,617.95 check] was the correct amount owed."[14]  Apogee's Mem. at 23-24.

As to Apogee's assertion that Bogoraz made deceitful statements to John, in the context of executing the PI Settlement Breakdown, which preceded the commencement of John's New York lawsuit, the PI Settlement Breakdown was executed on January 6, 2022, Apogee filed its suit in Texas on May 24, 2022, and Bogoraz filed this lawsuit on February 8, 2023.  Thus, even assuming that Apogee established that Bogoraz made a false statement to John, this "allegedly false statement[] w[as] not directed to a court, nor did [it] occur 'during the course of a pending judicial proceeding.'"  *Nicholson*, 2012 WL 273150, at *2.  Rather, Apogee has only alleged that Bogoraz made deceitful statements to Bogoraz's *client*—John.  Therefore, any purported statement to John about a "negotiated amount" cannot support a cause of action under New York Judiciary Law § 487(1) and Apogee's Judiciary Law § 487 counterclaim, as to statements made by Bogoraz to John, is dismissed.

As to Apogee's assertion that Bogoraz made misrepresentations to the New York State Office of Court Administration, it is without question that because the form and the statements contained therein were submitted to the New York State Office of Court Administration, they were "directed to a court."  *Id*. at 23.  However, Apogee has not pointed to record evidence showing that Bogoraz "intended" to deceive the Court.  Accordingly, a triable issue of fact as to whether Bogoraz intended to deceive the Court in its representations remains.  Thus, Apogee's motion for summary judgment as to its counterclaim for Bogoraz's January 26, 2022 form is denied.

---

[14] Apogee does not reference a "willful delay" or "willful" receipt of money, but it does assert that Bogoraz "misrepresented" and "deceived," *see generally* Apogee's Mem., thus, the Court analyzes Apogee's Judiciary Law §487 counterclaim under §487(1), which applies to "deceit or collusion."

Lastly, Apogee argues that Bogoraz "has also repeatedly misrepresented to this Court and the District Court of Travis County, Texas, that the amount of the [payment Bogoraz issued to Apogee] was the correct amount owed." *Id.* at 24. Contrary to Bogoraz's representations, "the amount tendered" was not "the correct amount." Decl. of Nelson M. Stewart, Ex. 11, Bogoraz's Verified Special Appearance to File Its Motion to Vacate the Default Judgment granted to Apogee, ECF 48-14 ¶ 31.

Although Bogoraz stated that it paid the "correct amount," and the amount it paid was deficient, without more Apogee cannot establish Bogoraz's *intent* to deceive. Bogoraz may have believed, for whatever reason, that it had a firm legal basis to believe that the $29,617.94 check, although deficient under the Agreement, was the "correct" amount under the law. Because "[a]llegations regarding an act of deceit or intent to deceive must be stated with particularity," *Bill Birds, Inc.*, 164 A.D.3d at 637, 82 N.Y.S.3d at 93-94, to establish that Bogoraz intended to deceive the Court, Apogee must do more than point out the dots. It must also connect them. It is not enough for Apogee to point to discrepancies in Bogoraz's representations to the Court. Instead, Apogee must "prove both actual deceit by the attorney, and causation, that is, that the deceit . . . actually caused plaintiff's damages." *Schweizer*, 93 F. Supp. 2d at 408. Apogee has not cleared that bar.

In sum, Apogee's motion for summary judgment as to its New York Judiciary Law § 487 counterclaim for deceit regarding representations from Bogoraz to John about a "Negotiated Amount," is dismissed, and Apogee's motion for summary judgment on its New York Judiciary Law §487 counterclaim for deceit regarding the Office of Court Administration form and for deceit regarding representations that the check was issued for the correct amount is denied.

### 6. Punitive Damages

Apogee seeks punitive damages in connection with its tort claims. Apogee argues that "Bogoraz committed reckless and willful disregard of Apogee's right to receive the full benefit of its investment in a malicious attempt to coerce Apogee into accepting a significantly lower return on that investment." Apogee's Mem. at 24. Apogee suggests that the harm it experienced resulted from Bogoraz's malice or gross negligence,[15] and thus Apogee is "entitled" to exemplary damages under Section 41.003 of the Texas Civil Practice and Remedies Code. *Id.*

### a. Choice of Law

Apogee failed to inform the Court of the appropriate choice of law analysis for punitive damages, even though the Court provided Apogee a second opportunity to do so. Apogee simply applies Texas law, without explanation.[16] On the other hand, Bogoraz argues that New York law should apply to any tort claims and punitive damages claims, because "Bogoraz'[s] alleged acts occurred in New York" and "New York has an interest in regulating the conduct of its attorneys."[17] Bogoraz's Letter at 3. The Court agrees with Bogoraz.

When applying New York's interest analysis to determine which state's laws govern punitive damages and "the domiciles of the parties differ, the location of the injury determines the

---

[15] Apogee does not clearly state what the purported harm here resulted from—fraud, malice, or gross negligence— however, Apogee's suggestion that Bogoraz "committed reckless and wilful disregard" comports with a gross negligence allegation.

[16] In response to the Court's request for a choice of law analysis on each of Apogee's counterclaims, Apogee provided an analysis but only for its claims sounding in contract—not those sounding in tort. Apogee argued that Texas state law should apply to Apogee's promissory estoppel and contract counterclaims, Apogee's Letter at 2, but did not argue that a specific state's law should apply to its conversion, tortious interference, or punitive damages counterclaims.

[17] Under New York law, when assessing punitive damages, courts are required to consider "the object or purpose of the wrongdoing to be punished and [to] give controlling weight to the law of the jurisdiction with the strongest interest in the resolution of the particular issue presented." *Nat'l Jewish Democratic Council v. Adelson*, 417 F. Supp. 3d 416, 426 (S.D.N.Y. 2019) (quotations omitted) (collecting cases). Because punitive damages are designed to punish the defendant and not to compensate the plaintiff, the choice of law inquiry for punitive damages is necessarily "defendant-focused." *Id.* at 426 (citations omitted).

governing substantive law absent special circumstances." *Monica Colledge v. Steelstone Grp., LLC*, 22-CV-2873 (EK) (RER), 2023 WL 5152300, at *3 (E.D.N.Y. June 16, 2023), *report and recommendation adopted sub nom. Colledge v. Steelstonge Grp., LLC*, 22-CV-2873 (EK) (RER), 2023 WL 5759191 (E.D.N.Y. Sept. 5, 2023) (citation omitted).

The Court finds that New York, not Texas, has the strongest interest in regulating Bogoraz's conduct because all of Bogoraz's conduct occurred in New York, Bogoraz advised John from New York, and Bogoraz is domiciled in New York. *See generally* Bogoraz's Letter at 3; Am. Compl. ¶ 7. Thus, New York law applies.

**b. Applying New York Law**

New York law permits an award of punitive damages in cases involving "gross, wanton, or willful fraud or other morally culpable conduct." *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 509 (2d Cir. 1991) (citation omitted). To establish entitlement to punitive damages arising from a breach of contract, the claimant must demonstrate that: "(1) the defendant's conduct is actionable as an independent tort; (2) the tortious conduct is of an egregious nature; (3) the egregious conduct was directed to the plaintiff; and (4) the conduct is part of a pattern directed at the public generally." *Wrap-N-Pack, Inc. v. Kaye*, 528 F. Supp. 2d 119, 123-24 (E.D.N.Y. 2007). Based on the Court's review of the evidence in the record, Apogee has not shown that Bogoraz's conduct was "part of a pattern of similar conduct directed at the public generally." *Rocanova v. Equitable Life Assur. Socy. of the United States*, 83 N.Y.2d 603, 614, 634 N.E.2d 940 (1994). Therefore, Apogee has not met its burden to satisfy the fourth element and cannot recover punitive damages.

Apogee's motion for summary judgment as to punitive damages is denied.

### D. Motion for Sanctions

The Court turns to Bogoraz's motion for sanctions.  On August 28, 2024, Bogoraz filed a motion for sanctions against Apogee under Federal Rule of Civil Procedure 11, asserting that Apogee made a false and misleading statement in its memorandum of law in support of its motion for summary judgment.  Mot. for Sanctions.  Specifically, Bogoraz claims that Apogee's assertion "that Bogoraz [] stated that Apogee '*negotiated*' the settlement amount of $29,617.95" is "knowingly false and intentionally deceptive."  *Id.* at 6.  Bogoraz argues that Bogoraz "*never* took the position that Apogee 'negotiated' or agreed to accept a lower amount than [Apogee] believed it" was entitled to.  *Id.* at 1 (emphasis in original).  Instead, Bogoraz insists that it explained to Apogee, on three separate occasions, that John owed a worker's compensation lien of $93,000 on the settlement amount and the lien had to be negotiated downward.  *See* Letter Motion for Discovery – Ex. B, ECF 36-2 at 7, 9; Letter Motion for Discovery – Ex. C, ECF 36-3 at 2.  Accordingly, Bogoraz argues that Apogee is liable for making false and misleading statements to the Court in its memorandum of law in support of its motion for summary judgment.  Mot. for Sanctions at 6.

Assuming *arguendo* that Bogoraz told John that the "Negotiated Amount" term referred only to the insurance company lien, Apogee still had at least some factual support for its representations.  "[S]anctions may not be imposed unless a particular allegation is *utterly lacking* in support," *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (emphasis added).  Indeed, Apogee's theory for how Bogoraz may have explained the discrepancy between the amount listed in the PI Settlement Breakdown and the amount listed in Appendix A to John, despite Bogoraz's earlier explanations, is not "utterly lacking in factual support."  That is, Appendix A lists one amount, *see* Appendix A, and the PI Settlement Breakdown lists another, *see* PI Settlement

Breakdown.  Bogoraz's explanation addresses the "Negotiated Amount" term but does not clarify what, if anything, Bogoraz told John to explain why the PI Settlement Breakdown lists an amount due to Apogee that is more than $7,000 less than the amount listed in Appendix A.  Thus, "considered in light of the reasonable beliefs of the attorney whose conduct is at issue," *Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009), this discrepancy constitutes sufficient "evidentiary support for [Apogee's] allegation."  *O'Brien*, 101 F.3d at 1489.

　　　Therefore, Bogoraz's motion for sanctions is denied.

**CONCLUSION**

For the forgoing reasons, Apogee's motion for summary judgment [ECF 48] is granted in part and denied in part. Apogee's motion is granted with respect to its: (1) counterclaim seeking dismissal of Bogoraz's claim for declaratory judgment, (2) counterclaim for promissory estoppel, (3) counterclaim for Section 38.001 attorney's fees, and (4) counterclaim for conversion. Apogee's motion is denied with respect to its: (1) counterclaim for breach of contract, (2) counterclaim regarding Bogoraz's representations to the New York State Office of Court Administration and Bogoraz's representations to courts asserting that the check it issued was the correct amount, (3) counterclaim for tortious interference, and (4) counterclaim for punitive damages. Apogee's breach of contract counterclaim and its counterclaim regarding Bogoraz's representations to John about the PI Settlement are dismissed, and Bogoraz's claim for declaratory judgment is dismissed.

Further, Bogoraz's motions to strike a portion of Apogee's letter to the Court [ECF 56] and for sanctions [ECF 50] are denied.

The Court directs the parties to submit a proposed judgment pursuant to the findings in this Order within 10 days. Should the parties disagree on the calculation of interest, each side shall submit an affidavit with supporting documentation setting forth its calculations.

Apogee is ordered to file a letter stating its intention to pursue its claims against Helen John pursuant to the Third-Party Complaint.

SO ORDERED.

/s/ _____
ORELIA E. MERCHANT
United States District Judge

Dated: March 27, 2025
       Brooklyn, New York